## 64000. LUCK v. THE STATE.

CARLEY, Judge.

Appellant was tried under a two-count indictment. Count I alleged a violation of Ga. Code Ann. § 79A-811 (i) in that appellant sold "an unidentified substance ... being a counterfeit of a controlled substance, to wit: Methaqualone . . ." Count II also alleged, as a violation of the Georgia Controlled Substances Act, appellant's possession and control of methaqualone. The jury returned a verdict of guilty on both counts. Appellant appeals from the judgment of conviction and sentence entered on the jury verdict.

1. Appellant first enumerates as error the failure to grant his directed verdict of acquittal as to Count I. Code Ann. § 79A-811 (i) provides: "Except as authorized by this Chapter, it is unlawful for any person to possess, have under his control, manufacture, deliver, dispense, administer, sell or possess with intent to distribute a counterfeit substance ..." Code Ann. § 79A-802 (f), in relevant part, defines "counterfeit substance" as "any substance *in a container which bears a label* falsely identifying the contents as a controlled substance." (Emphasis supplied.) The basis for appellant's contention that his motion for a directed verdict was erroneously denied is his assertion that a substance is not "counterfeit" within the above statutory definition unless the substance is in a "container" which bears false labeling. Thus appellant urges that, although the pills which were the "unidentified substance" in Count I themselves might have displayed labeling falsely identifying them as methaqualone, the lack of false labeling on the bottles in which they were contained required the grant of his motion for a directed verdict of acquittal.

It does appear that the relevant part of Code Ann. § 79A-802 (f) as presently worded would require that the label falsely identifying the material as a "controlled substance" appear on a "container" other than the exterior of the substance itself. If the statute were intended to cover non-controlled materials which bear false labeling on the exterior of the "substance" itself as well as a substance in a falsely labeled "container" such as a bottle, it seems that the definitional language otherwise appearing in Code Ann. § 79A-802 (f) which draws a distinction between the "substance" and the "container" would have been repeated: " 'Counterfeit substance' means a ... *substance which, or the container or labeling of which ...*"

However, we need not decide in the instant case whether false labeling appearing only on the substance itself comes within the definition of "counterfeit substance" as set forth in Code Ann. § 79A-802 (f). The evidence establishes that the "unidentified

substance" was contained in four bottles, three of which bore the inscription "714" on the caps. The evidence further establishes that "714" signifies "something associated with methaqualone." " 'Label' shall mean a display of written, printed or pictorial matter upon the immediate container of any drug, device or cosmetic." Code Ann. § 79A-102 (i). Accordingly, we hold that "714" appearing on the caps of the bottles containing the "unidentified substance" is a "label" falsely identifying the contents as methaqualone.

The evidence established that appellant had in his possession and control a substance in containers bearing labels falsely identifying the contents as a controlled substance. It was not error to deny appellant's motion for a directed verdict of acquittal on Count I.

2. With regard to Count II, appellant enumerates as error the admission of testimony identifying as methaqualone the substance found in his possession. It is urged that, in violation of Code Ann. § 27-1303, a copy of the crime lab report which served as the basis for the testimony was not furnished "at least 10 days prior to the trial of the case."

It appears that, pursuant to Code Ann. § 27-1303 (a), appellant filed a timely demand for a copy of the report. Between the date that the demand was filed and trial, a period of several weeks, the district attorney received from the crime lab an oral communication that the substance was in fact methaqualone. The district attorney informed defense counsel of this information and agreed to provide a copy of the report itself as soon as it was received from the crime lab. The district attorney did not come into actual possession of a copy of the report until the day before trial. Defense counsel did not receive a copy of the report until the morning of the day of trial. On appeal, appellant takes the position that under the code section it was up to the district attorney to furnish the report to him within 10 days and that, not having done so, the state was precluded from using testimony founded on the report.

Code Ann. § 27-1303 (a) provides in relevant part: "In all criminal trials, felony and misdemeanor, the defendant *shall* be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal . . . If the scientific report is in the possession of or *available to the district attorney,* he *must* comply with this section at least 10 days prior to the trial of the case." (Emphasis supplied.) This statute speaks in mandatory terms and it is no longer possible for a district attorney to avoid its directive by relying at trial solely upon testimony "arising therefrom" instead of introducing the report itself. *Tanner v. State,* 160 Ga. App. 266, 268 (287 SE2d 268) (1981).

Moreover, to come within the ambit of the statute, a scientific report need not be in the possession of the district attorney. The report is "discoverable" if it is available to the district attorney. It can not be urged that an existing scientific report in the possession of the state crime lab, as was the report in the instant case, is not "available" to a district attorney. Accordingly, appellant was entitled to a copy of the report in the instant case and the trial court erred in allowing the testimony based upon the report.

In *Blackmon v. State,* 158 Ga. App. 665, 666-667 (281 SE2d 634) (1981) we held that, assuming the existence of such circumstances as in fact exist in the instant case, the error in the admission of testimony based upon the scientific report would be harmless: "[D]efense counsel was apparently informed of the true interpretation of the final written report . . . as soon as the district attorney himself had been apprised of it. [Cit.] Under these circumstances, defense counsel being aware of the facts underlying the report, we cannot say that appellant was prejudiced by the admission of the witness' testimony." Implicit in the rationale of our holding in *Blackmon* was the prior interpretation of Code Ann. § 27-1303 declared in *Smith v. State,* 158 Ga. App. 663, 665 (281 SE2d 631) (1981), that "the only sanction for nonproduction [is] that such report shall be excluded from evidence." However, as noted above, this restrictive and narrow interpretation of the criminal discovery statutes has subsequently been rejected. "The state should not be allowed to do indirectly that which it is prohibited from doing directly. [Cit.]" *Tanner,* 160 Ga. App. at 268, supra. Consistent with the mandatory language of the statute itself, its current broad interpretation and the duty which devolves upon this court "to give full force and effect to all [of its] provisions . . ." *(Tanner,* 160 Ga. App. at 268, supra), the harmless error rationale enunciated in *Blackmon,* supra, sanctioning the oral delivery of test results rather than a copy of the scientific report itself, will no longer be followed, and that decision is overruled in this regard. Accordingly, as to Count II in the instant case, "the judgment of the trial court is reversed and remanded with direction that testimony and evidence arising from the [state crime lab's] report be excluded and suppressed from any retrial of this case unless and until the district attorney has fully complied with the provisions of Code Ann. § 27-1303." *Tanner,* 160 Ga. App. at 268-269, supra.

3. Appellant enumerates as error the admission over objection of several inculpatory taped telephone conversations which were recorded without appellant's knowledge but with the "consent" of the other party. Code Ann. § 26-3006. It is urged that the evidence was inadmissible because the state had not complied with the

"disclosure" provision of Code Ann. § 26-3004 (j). See generally *Caudill v. State,* 157 Ga. App. 415, 416 (1) (277 SE2d 773) (1981). By its express terms, Code Ann. § 26-3004 (j) relates only to the disclosure of evidence of intercepted conversations secured pursuant to a court-ordered warrant. The tapes of the conversation in the instant case were obtained by virtue of the consent of "one party thereto" under Code Ann. § 26-3006, and were not secured pursuant to a warrant under Code Ann. § 26-3004. "The conversation[s] recorded here [were] 'in furtherance of a crime' and, as it was done with the consent of one of the parties, it met the requirement of the statute authorizing it to be done in a private place and may be used as evidence upon proof of its authenticity. [Cit.]" *Humphrey v. State,* 231 Ga. 855, 863 (204 SE2d 603) (1974). Appellant does not contest that the authenticity of the tapes was proved. Accordingly, we find no error in their admission into evidence. See *Brooks v. State,* 141 Ga. App. 725, 735 (8b) (234 SE2d 541) (1977).

4. For the reasons discussed in Division 2, the judgment as to Count II is reversed. No other error appearing as to the judgment of conviction and sentence entered on Count I, that judgment is affirmed.

*Judgment affirmed as to Count I, reversed as to Count II. Quillian, C. J., McMurray, P. J., Shulman, P. J., Birdsong and Pope, JJ., concur. Deen, P. J., concurs specially. Banke and Sognier, JJ., dissent.*

DECIDED SEPTEMBER 30, 1982.

*David E. Perry,* for appellant.
*Thomas H. Pittman, District Attorney, C. Paul Bowden, Assistant District Attorney,* for appellee.

DEEN, Presiding Judge, concurring specially.

Overruling *Blackmon v. State,* 158 Ga. App. 665 (281 SE2d 634) (1981) has my complete approval. This was my position in *Madigan v. State,* 160 Ga. App. 656, 658 (288 SE2d 34) (1981) in stating: "In my opinion, we should clarify the status of *Blackmon,* supra, that is, to the extent that it conflicts with *Tanner,* supra, it will not be followed." In the *Blackmon* case, as in the instant case, there appears no independent evidence other than and separate from the scientific report or oral testimony relating thereto as to the issue under consideration.

This situation sharply differs from where independent other cumulative evidence appears supporting an issue exemplified by the Supreme Court case of *Odom v. State,* 248 Ga. 434, 437 (283 SE2d

885) (1981) holding as harmless error the admission of oral testimony relating to an excluded scientific report. Judge Banke's dissent in *Metts v. State,* 162 Ga. App. 641 (291 SE2d 405) (1982), in my opinion, is exactly in line with *Odom,* supra, and the majority opinion in *Metts,* supra, should be overruled as in conflict with *Odom.*

SOGNIER, Judge, dissenting.

I respectfully dissent to the reversal of this case as to Count II. The crime laboratory report stated: "Results: The white tablet is positive for methaqualone, Schedule II." The Assistant D. A. testified "I told you [defense counsel] verbally in my office several weeks ago that they found one tablet on Mr. Luck and I had a verbal from the Crime Lab that it was positive for methaqualone." Also, "All right, we did not have until late yesterday afternoon a copy of the Crime Lab report. And we have not as of this time received a copy from the Crime Lab. The only copy I have is a copy contained in a police report turned over to me yesterday afternoon by Mitch Williams, that's the only copy I have and that's the reason, Mr. Perry, you were not served with a copy of it since we did not have it in our possession.

"Q. You received it yesterday afternoon?

"A. Late yesterday afternoon, yes, sir. I would say it was shortly before 5:00." The record shows a copy of the written report was then turned over to the defendant's attorney the next morning.

I can see no prejudice resulting to the defendant by the District Attorney's acts in this instance. Certainly the overriding purpose of Code Ann. § 27-1303 is to timely furnish the defendant the contents of such reports so he might adequately prepare for trial. This was done. Absent a showing of prejudice, I see no harmful error. Under *Blackmon v. State,* 158 Ga. App. 665, 666-667 (281 SE2d 634) (1981), we held a similar omission if error to be harmless. I would affirm such holding, not overrule it.

I am authorized to state that Judge Banke joins in this dissent.