### 64698. LAW v. THE STATE.
### 64699. WHITFIELD v. THE STATE.

POPE, Judge.

Appellants Law and Whitfield were jointly indicted, tried and convicted along with Corean V. Coleman and Loretta Bradley for possession of cocaine in violation of the Georgia Controlled Substances Act. All four were arrested after law enforcement officers discovered cocaine in their jointly occupied motel room in Bainbridge, Georgia. The arrests were the result of the officers' all-night stake-out of the room and a vehicle reportedly used by appellants which was parked in the motel parking lot. The cocaine was seized pursuant to a search warrant. For ease of disposition, the appeals of Law and Whitfield have been consolidated and those enumerations common to both appellants will be addressed as one.

1. Appellants first assign error to the trial court's denial of their motion to suppress the evidence seized pursuant to the search warrant. The evidence disclosed that law enforcement officers had begun surveillance of the motel room and vehicle at approximately 5:00 p.m. on October 8, 1981 because appellants were known by the authorities in Florida and Georgia to have been involved in the trafficking of illegal drugs and had been observed as present within Decatur County. Later that evening, at 8:30 p.m., Decatur County Deputy Sheriff B. J. Clenny received a tip from a confidential

informant that appellants had been seen by the informant in the vehicle with cocaine in their possession and also offering it for sale earlier on that same day. At 11:00 p.m. Deputy Clenny obtained a search warrant from a justice of the peace based upon his affidavit and after being sworn. The warrant was issued for the motel room and the vehicle. Surveillance continued through the night, and the search warrant was executed and the arrests made at approximately 8:00 a.m. on October 9, 1981.

Appellants challenge the validity of the search warrant based upon an asserted lack of probable cause. This argument is primarily centered upon the claim that the affidavit was insufficient to meet the tests advanced in Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), and Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969). "[W]here hearsay such as an informer's tip is relied upon for probable cause, the sworn information placed before the justice of the peace must adequately set forth (1) the ' "underlying circumstances" necessary to enable the magistrate independently to judge of the validity . . .' of the information, and (2) the informant's credibility or reliability. Spinelli [v. United States, supra]." *Simmons v. State,* 233 Ga. 429, 431-2 (211 SE2d 725) (1975). The affidavit provided the justice of the peace with the knowledge that the informant had personally observed appellants in possession of the cocaine. The informant's reliability was demonstrated within the affidavit by statements that the informant had furnished information in the previous six months leading to the issuance of three felony warrants for possession of illegal drugs and that all information provided by the informant had proven to be true. We note that no competent evidence was introduced at the hearing on the motion to suppress to discredit the affidavit of Deputy Clenny. Both prongs of the preceding test for a showing of probable cause based upon an unidentified informant's tip were met in Deputy Clenny's affidavit. See *Mitchell v. State,* 150 Ga. App. 44 (1) (256 SE2d 652) (1979); *Lewis v. State,* 144 Ga. App. 847 (2) (242 SE2d 725) (1978).

Additionally, appellants contend that the search of the motel room exceeded that authorized by the personal observation of the informant since the affidavit stated that appellants were seen in possession of the cocaine within the vehicle. However, the affidavit further recited that the cocaine was being concealed in the vehicle and the motel room according to the informant and that certain named police officers had had the vehicle and the jointly occupied motel room under surveillance since 5:00 p.m. See generally *State v. Alonso,* 159 Ga. App. 242 (283 SE2d 57) (1981). Moreover, the affidavit contains an affirmative statement that the affiant, Deputy Clenny, had knowledge of appellants as being involved in the

trafficking of drugs. " '[W]e cannot conclude that a policeman's knowledge of a suspect's reputation . . . is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely . . .' " *Caffo v. State,* 247 Ga. 751, 755 (279 SE2d 678) (1981), quoting United States v. Harris, 403 U. S. 573, 583 (91 SC 2075, 29 LE2d 723) (1971). From our review of the affidavit, we find sufficient evidence to uphold the conclusion of the justice of the peace that probable cause existed for the issuance of the search warrant. See *Devier v. State,* 247 Ga. 635 (277 SE2d 729) (1981). The trial court did not err in denying appellants' motions to suppress.

2. Appellants next contend that the state failed to show beyond a reasonable doubt that either appellant was in actual or constructive possession of the cocaine. We disagree. Although the motel room was not rented in the name of either appellant, evidence was adduced at trial to show that appellants had been in joint occupation of the room with Ms. Coleman and Ms. Bradley since at least 5:00 p.m. on October 8, 1981. Upon the entry of the law enforcement officers into the motel room, appellants ran from the bedroom area of the room into its adjoining bathroom. The cocaine was then discovered by the officers as it lay in plain view in a formation of parallel lines upon the dresser in the bedroom area.

In the case sub judice, all occupants of the motel room (except for the infant child of one defendant) were indicted and convicted for possession of the cocaine. The trial court properly instructed the jury upon the law of possession and the law regarding parties to a crime. See *State v. Lewis,* 249 Ga. 565 (292 SE2d 667) (1982). "It is not necessary that the state remove every possibility of the defendant's innocence." *Castleberry v. State,* 152 Ga. App. 769, 770 (264 SE2d 239) (1979). See *Valenzuela v. State,* 157 Ga. App. 247 (2) (277 SE2d 56) (1981). The evidence in this case was sufficient to support the verdict, and the state proved appellants' possession of the illegal drug beyond a reasonable doubt. See *Tamez v. State,* 148 Ga. App. 307 (1) (251 SE2d 159) (1978).

3. Appellants enumerate as error the trial court's admission of testimony explaining the results of certain laboratory tests. Appellants base their argument upon their assertion that the state failed to supply them with a copy of the scientific report after a written demand had been made. Code Ann. § 27-1303(a) (now OCGA § 17-7-211(b)) provides: "In all criminal trials, felony and misdemeanor, the defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal. This

request for copy of any written scientific reports shall be made by the defendant in writing at arraignment or within any reasonable time prior to trial. It shall be within the sound discretion of the trial judge to determine in each case what constitutes a reasonable time prior to trial if such written request is not made at arraignment. If the scientific report is in the possession of or available to the district attorney, he must comply with this section at least 10 days prior to the trial of the case."

In the case sub judice, the written demand for discovery of written scientific reports was made on the date of arraignment, November 6, 1981. Trial began on November 11, 1981. The trial court allowed the testimony of Mr. Terry Mills, a forensic chemist with the Georgia State Crime Lab, describing the results of the laboratory analysis of the substance found in the motel room. Appellants objected to the admission of this testimony claiming that the state had failed to comply with Code Ann. § 27-1303 (a).

For two reasons the trial court properly admitted Mr. Mills' testimony. First, in this case there was no written scientific report. Although appellants direct this court to recent decisions enforcing the statutory remedy of exclusion of the reports and/or testimony explaining them when the state has failed to comply with the applicable criminal discovery statute, each cited case is distinguishable because in each of those instances there was a *written* scientific report. See *Madigan v. State,* 160 Ga. App. 656 (288 SE2d 34) (1981), rev'd on other grounds, 249 Ga. 571 (292 SE2d 406) (1982); *Tanner v. State,* 160 Ga. App. 266 (287 SE2d 268) (1981). Further, the record reveals no apparent effort by the state to circumvent the statute nor even a hint of prosecutorial "sandbagging." On the contrary, there was testimony that the substance was tested by an independent analyst on behalf of the defense with the cooperation of the state.

Secondly, even if a written report had existed, appellants' written demand was not timely. The meaning of "timely written demand" under Code Ann. § 27-1303 was recently interpreted by the Supreme Court. In *State v. Meminger,* 249 Ga. 561, 564 (292 SE2d 681) (1982), the court held that ". . . for a request to be timely, whether it is made 'at arraignment' or at some other time, it must precede the tenth day before the trial of the case. Otherwise, it would be impossible for the state to comply with the statute." The five-day span between the demand and trial precluded a finding of timeliness under *Meminger.*

4. Appellant Law asserts that the trial court erred in allowing the state's witness, Deputy Sheriff B. J. Clenny, to remain in the courtroom during the proceedings after the rule of sequestration had

been invoked, and in failing to direct that he be called as the state's first witness. The assistant district attorney requested Deputy Clenny's presence at his table to assist in the prosecution, claiming that it would be necessary for a proper presentation of the case. Deputy Clenny was permitted to testify after other witnesses, thus allowing the state to call witnesses in their chronological order of involvement in the investigation.

"It has been held in numerous decisions that it is within the trial court's discretion to allow the prosecuting witness to remain in the courtroom, as an exception to the sequestration rule. [Cits.] It has also been held that, based upon a showing by the state of some need not to call the unsequestered witness first, the trial court is authorized, in its discretion, to allow the unsequestered witness to be called to the stand after other witnesses have testified." *Hall v. State,* 243 Ga. 207, 210 (253 SE2d 160) (1979). Accord, *McNeal v. State,* 228 Ga. 633 (4) (187 SE2d 271) (1972). The trial court did not abuse this discretion.

5. Appellant Law also asserts that the trial court erred in admitting the testimony of Mr. Terry Mills regarding the results of laboratory tests on the substance found in the motel room because the state failed to establish a proper chain of custody. The evidence of record shows the following: Upon discovery of the substance, Officer Funderburke stood watch over it until Deputy Clenny collected the substance into a plastic bag. Once back in his office, Clenny sealed the bag with tape and initialed it in the presence of G.B.I. Agent Turner. On the same date of the arrests, October 9, 1981, Clenny, Funderburke, and Turner delivered the plastic bag to Dr. Jim Howard at the State Crime Lab in Moultrie. Identification numbers were then placed upon the bag by Mr. Larry Slighton, Dr. Howard's co-worker. From October 9, 1981 to November 2, 1981, the bag was stored under lock and key at the Moultrie lab, accessible only to Dr. Howard and Mr. Slighton. Due to a shortage of personnel qualified to analyze the substance, the plastic bag containing the substance was sent on November 2, 1981 via United Parcel Service by Mr. Slighton to the State Crime Lab in Atlanta. It was received and initialed by Mr. Terry Mills on November 3, 1981. The bag bore the same identification numbers as those placed upon it in Moultrie. The substance was analyzed and sealed by Mills who kept the substance-filled bag with him until the trial.

Although Mr. Slighton did not testify at trial, the state's evidence was sufficient to establish a proper chain of custody. " '[I]t is not necessary that the state negative all possibility of tampering but only that it show it is reasonably certain there was no alteration — when there is only a bare speculation of tampering, it is proper to

admit the evidence and let what doubt remains go to its weight.' [Cit.]" *Shrader v. State,* 159 Ga. App. 522, 524-5 (284 SE2d 37) (1981). See *Anderson v. State,* 247 Ga. 397 (2) (276 SE2d 603) (1981); *Sewell v. State,* 162 Ga. App. 483 (3) (291 SE2d 783) (1982); *Dempsey v. State,* 162 Ga. App. 390 (4) (291 SE2d 449) (1982). Further, the fact that the amount of cocaine introduced at trial was substantially less than that seized from the motel room was explained by testimony that it was consumed by the analyses performed by Mr. Mills and the analyst acting on behalf of the defense. See *Strong v. State,* 161 Ga. App. 123 (1) (291 SE2d 33) (1982). This enumeration is without merit.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

Decided February 8, 1983 —
Rehearings denied March 9, 1983 — 

*George C. Floyd, Leonard H. Conger,* for appellants.
*Gilbert J. Murrah, District Attorney, Edward C. Parker, Assistant District Attorney,* for appellee.