A90A1261. LITTLEFIELD v. THE STATE.
(398 SE2d 375)

BANKE, Presiding Judge.

The appellant was convicted in the Probate Court of Upson County of driving under the influence of alcohol. She appealed to superior court, where she was again found guilty of the offense, and then filed the present appeal to this court. *Held:*

1. The evidence was sufficient to enable a rational trier of fact to find the appellant guilty of driving under the influence of alcohol beyond a reasonable doubt. See generally *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant contends that the results of a blood-alcohol analysis performed on a sample of blood extracted from her should have been excluded because there was no showing that the blood had been drawn by a "physician, registered nurse, laboratory technician, emergency medical technician, or other qualified person," as required by OCGA § 40-6-392 (a) (2). See generally *Buffington v. State,* 190 Ga. App. 365 (2) (378 SE2d 884) (1989).

The blood sample was drawn at a hospital in the presence of the investigating officer, a state trooper. Asked on cross-examination to identify the person who had performed the procedure, the trooper responded as follows: "I do not have those forms with me, but if you'll allow me to go out to my car, I think I've got them out there." Defense counsel did not respond to this offer but continued his questioning, as follows: "Q. Do you know what the qualifications were? A. I don't remember if this was a RN nurse or a lab tech that drew her

particular blood. Q. Okay. So you don't . . . really know what the qualifications were, do you? A. If you can have me dismissed, I think I got it in my car. Q. Okay. I'm asking you now. Do you know what the qualifications were? A. I assume they were qualified, or they wouldn't have been hired by the hospital. Q. Okay. So you just know it was somebody working at the hospital? A. Yes, sir. Q. Okay. And they have orderlies that work at the hospital? A. It was not an orderly, no, sir. I was sure of that. Q. Okay. Did you see a certificate that said orderly or I'm not an orderly? A. No, sir, but he (sic) wasn't dressed like an orderly. Q. How was she dressed? A. Like a nurse."

The state's attorney interrupted the questioning at this point to make the following suggestion: "Your Honor, it seems to me that if [defense counsel] wants to know who drew the blood, and [the trooper] has the information in his car — I don't [know] about the rest of this group, but I could use about three minutes to sit here and do nothing while he goes and gets it. . . ." Again, the appellant's counsel expressed no interest in allowing the trooper to obtain the information in this manner but instead moved on to another subject. However, when, after the trooper had been excused, the results of the blood-alcohol test were subsequently offered as evidence, counsel objected on the ground that the identity and qualifications of the individual who had drawn the blood had not been proven.

Assuming arguendo that the testimony provided by the trooper would not otherwise have been sufficient to establish a proper foundation for the introduction of the test results, we conclude that, by ignoring the repeated offers by the trooper and the state's attorney to produce the information regarding the identity and qualifications of the individual who had drawn the blood, the appellant's counsel gave the impression that he did not intend to insist on such evidence. "[A] party will not be heard to complain of error induced by his own conduct. . . . [Cits.]" *Southern Nitrogen Co. v. Manuel*, 110 Ga. App. 597 (3) (139 SE2d 453) (1964). Under the circumstances, we hold that the trial court did not abuse its discretion in admitting the results of the blood-alcohol test over the appellant's objection that a proper foundation had not been laid.

3. The appellant further complains that she was not given a copy of the scientific report setting forth the results of this blood test at least 10 days prior to the trial, in accordance with a demand for such discovery filed pursuant to OCGA § 17-7-211. However, the record before us contains no such written demand; and it is apparent from the transcript that if one was in fact filed, it was not filed until the day of the trial. "[F]or a request to be timely, whether it is made 'at arraignment' or at some other time, it must precede the tenth day before the trial of the case. Otherwise, it would be impossible for the state to comply with the statute." *State v. Meminger*, 249 Ga. 561,

564 (292 SE2d 681) (1982). Accord *Law v. State*, 165 Ga. App. 687, 690 (302 SE2d 570) (1983), aff'd 251 Ga. 525 (307 SE2d 904) (1983).

4. The appellant asserts that the superior court judge was not empowered to review the case because he "holds one of the judgships (sic) which have was (sic) ruled illegally created in violation of Section 5 of the Voting Rights Act by the United States Justice Department on April 25, 1990." The record before us contains no support for this assertion; and the appellant did not, in any event, raise this issue in the superior court. Accordingly, this contention presents nothing for review.

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED SEPTEMBER 4, 1990 —
REHEARING DENIED OCTOBER 22, 1990 — 

*Virgil L. Brown & Associates, Virgil L. Brown, Bentley C. Adams III*, for appellant.
*W. Fletcher Sams, District Attorney*, for appellee.